THE TALIFER COMPANY, Plaintiff, *v.* AMY PLAUT FALK, Defendant.

(Supreme Court, New York Special Term, November, 1918.)

Title — what required to establish good title — evidence — where description by metes and bounds incorrect — dismissal of complaint — deeds.

In an action at law to recover the amount paid upon the execution of a contract for the purchase and sale of real estate upon the ground that defendant did not have title to the whole of the premises, the burden is upon plaintiff to establish that defendant cannot give a good title to the property.

Even though the plaintiff in such action establishes a *prima facie* case of a defect in title, the defendant may show by parol evidence a state of facts in support of his title.

In such an action it appeared that by a deed of the premises in question, made by one of defendant's predecessors in title, the metes and bounds were described as: " Beginning at a point. * * * distant twenty feet " from a certain corner, " which point is opposite the centre of a party wall between the building upon the land hereby conveyed and the building adjoining the same on the east," which, according to the survey of the premises would make the width thereof nineteen feet and seven

inches. No other deed in the chain of title made any mention of an easterly wall and the proof showed that reference thereto was incorrect and due to a scrivener's error. The public records of the tax department show that the corner property was a vacant lot, and as matter of fact a mortgage made by the grantee of the premises in question contained no reference to an easterly party wall, but fixed the point of beginning as distant twenty feet from the corner mentioned in the deed. *Held,* that as in connection with other evidence it appeared that the intention of the parties to the deed in question was that the starting point was the said twenty feet and not the center of the easterly wall, plaintiff was not warranted in rejecting the title tendered, and its complaint will be dismissed for lack of proof that there was a reasonable doubt of defendant's title which was acquired under a devise to her from one whose title was deducible from the referee's deed under the sale in foreclosure of said mortgage.

While ordinarily such a monument as the "center" of the party wall would be of great importance in determining the starting point, yet it conclusively appearing that the easterly wall was not a party wall, then due weight must be given to the monument fixing the beginning at a point coincident with the easterly boundary of the easterly wall and reconcilable with the description that the premises had a frontage of twenty feet.

In an action to foreclose said mortgage one who held the title under a deed which described the premises by a description similar to that appearing in the mortgage and in the deed to plaintiff's testator, and the only one who could have disputed the title of the mortgagee to the five inches now in dispute was made a party defendant and not only did not question said title but affirmatively asserted in his schedules in bankruptcy that he owned no real property. *Held,* a further reason for upholding defendant's title to the disputed five-inch strip, as the decree in foreclosure and the sale thereunder were binding upon all proper parties to the action, the force and effect of said decree being in nowise affected by said defendant's failure to contest the plaintiff's claim in that action.

ACTION to remove cloud on title.

Davies, Auerbach & Cornell (Warner B. Matteson and Martin A. Schenck, of counsel), for plaintiff.

Wise & Seligsberg (Isaac Lande, of counsel), for defendant.

GREENBAUM, J. On or about March 7, 1916, the parties to this action entered into an agreement for the purchase and sale of the house and lot known as No. 28 East Seventy-sixth street, borough of Manhattan. The plaintiff, vendee, refused to accept the duly executed deed tendered to it, upon the alleged ground that defendant did not have title to the whole of the premises. The alleged failure of title arises from the deed of William Noble, one of the predecessors of the defendant in title, dated November 1, 1883, to one John Noble, wherein the metes and bounds were described as follows: '' Beginning at a point on the southerly side of Seventy-sixth street, distant twenty feet westerly from the southwesterly corner of Seventy-sixth street and Madison avenue, which point is opposite the centre of a party wall between the building upon the land hereby conveyed and the building adjoining the same on the east thereof, and running thence southerly parallel with Madison avenue and part of the way through the centre of said party wall one hundred and two feet and two inches to the centre line of the block between Seventy-sixth and Seventy-fifth streets; thence westerly along said centre line of the block twenty feet to a point opposite the centre of another party wall between the building upon the land hereby conveyed and the building adjoining the same on the west thereof; thence northerly and parallel with Madison avenue and part of the way through the centre of said last named party wall one hundred and two feet and two inches to the southerly side of Seventy-sixth street, and thence easterly along said southerly side of Seventy-sixth street twenty feet to the point or place of beginning. Said premises being now known as No. 28 East Seventy-

sixth street, in the City of New York." The plaintiff
contends that the point of beginning, as described in
the deed, is fixed as " opposite the centre " of a party
wall, which, according to the survey of the premises,
would make the width of the premises nineteen feet
seven inches; that is, five inches less than twenty feet
frontage, as described in the contract of sale. The
action is brought to recover the sum of $1,000, the
amount paid by plaintiff upon the execution of the con-
tract. When John Noble acquired title under the deed
containing the description above quoted, he also took
title to nine other pieces of property, each covering a
house and lot of the width of twenty feet, embracing
together two hundred feet continuous frontage on the
southerly side of Seventy-sixth street, commencing at
a point twenty feet westerly from the southwesterly
corner of Seventy-sixth street and Madison avenue.
Simultaneously with the delivery of the several deeds,
he executed to the New York Life Insurance Com-
pany a mortgage on each of these separate parcels.
The description in the mortgage covering the premises
in suit contained no reference to an easterly party wall,
but fixed the point of beginning as distant twenty feet
from the southwesterly corner of Seventy-sixth street
and Madison avenue. Immediately upon the execution
and record of these mortgages, John Noble reconveyed
the several parcels to William Noble by deeds contain-
ing the same descriptions as those appearing in the
respective deeds to him. The deeds and the mortgages
above mentioned were recorded on November 7, 1883,
within a few minutes of each other. Aside from the
deeds to and from John Noble in November, 1883, no
other deed in the chain of title to the premises in suit
makes any mention of an easterly party wall or of a
point of beginning opposite the centre of this wall. On
December 31, 1883, William Noble conveyed No. 28

East Seventy-sixth street to one John Harper Bonnell, by deed containing a description similar to that set forth in the mortgage and in the contract of sale, subject to said mortgage. On March 29, 1884, Bonnell conveyed the property to Thomas H. Brush by deed containing a description similar to that appearing in the Bonnell deed, and also subject to the mortgage in question. In this connection it may appropriately be stated that on December 7, 1881, William Noble had conveyed to John Noble in a single deed the ten houses and lots heretofore mentioned, situate on the southerly side of Seventy-sixth street, covering a frontage of two hundred feet, and described as commencing twenty feet from the southwesterly corner of Madison avenue and Seventy-sixth street, and that on the same day he had made ten separate mortgages to the New York Life Insurance Company severally covering the ten buildings, each twenty feet wide, and that on the 8th day of December, 1881, John Noble reconveyed this plot of two hundred feet in width to William Noble, his grantor, subject to these mortgages. Each of the second series of mortgages made in 1883 by John Noble was made for a sum in excess of each of those in the first series, which had been duly satisfied of record. In 1884 the New York Life Insurance Company foreclosed the 1883 mortgage affecting the premises under discussion. Thomas H. Brush was made a defendant, and was duly served with the summons and complaint. Judgment of foreclosure by default was entered on November 13, 1884, and upon the sale that followed the New York Life Insurance Company became the purchaser. The defendant in this action acquired title to the premises under a devise to her from her deceased father, Albert Plaut, whose title was deducible from the referee's deed under the sale in the foreclosure just mentioned. In January, 1899, Thomas H. Brush was

adjudicated a bankrupt. His schedules made no mention of his ownership of any real estate or interest therein and showed that he swore that he owned no real property. Plaintiff contends that the New York Life Insurance Company never acquired title as purchaser to the five-inch strip in question, because the description in the deed to John Noble fixed the point of beginning as " opposite to the centre of a party wall." There is no dispute that Thomas H. Brush under this title from Bonnell took title from William Noble at a time when concededly the latter had title to the five-inch strip. It seems to me that the plaintiff's contention is untenable. It is to be borne in mind that this is an action at law and that the burden is upon the plaintiff to establish that the defendant cannot give a good title to the premises. In such an action, even though a plaintiff establishes a *prima facie* case of a defect in title, the defendant may show by parol proof a state of facts in support of his title. *Murray* v. *Harway,* 56 N. Y. 337. Indeed even in equity " there is no inflexible rule that a vendor must furnish a perfect record or paper title. It has frequently been held that the defects in the record or paper title may be cured or removed by parol evidence." *Hellreigel* v. *Manning,* 97 N. Y. 56. The last cited case is also authority for the proposition that a mere doubt as to vendor's title is not sufficient ground for refusing to take. " There must be a reasonable doubt." The learned counsel of the plaintiff argues that the centre of the party wall constitutes a monument which fixes the starting point. Ordinarily such a monument would be of great importance in determining the starting point. But where it conclusively appears that the easterly wall was not a party wall, then due weight should be given to the monument fixing the beginning at a " point on the southerly side of Seventy-sixth street distant twenty

feet from the southwesterly corner of Seventy-sixth street and Madison avenue,'' which is coincident with the easterly boundary of the easterly wall and reconcilable with the description that the premises had a frontage of twenty feet. *Baldwin* v. *Brown,* 16 N. Y. 359; *Higinbotham* v. *Stoddard,* 72 id. 94; *Brookman* v. *Kurzman,* 94 id. 272; *Matter of City of New York,* 209 id. 344, 348. The true rule governing the matter of monuments is tersely stated in *Green* v. *Horn,* 207 N. Y. 489, 499, as follows: '' The rule that monuments control courses and distances is merely a rule of construction to ascertain the intention of the parties. If that intention is otherwise plainly manifested, it need not be ignored in blind adherence to such a rule.   *   *   * That intention must control a manifest error.'' To the same effect is *McNichol* v. *Flynn,* 16 App. Div. 646. The proofs establish beyond a doubt that the reference to an easterly party wall in the description of the 1883 deed of William Noble to John Noble was incorrect and due to a scrivener's error. The public records of the tax department show that the corner property was a vacant lot, and that as a matter of fact when the mortgage was made there was no party wall on the premises. It is true that the description in the deed that the point of beginning is distant twenty feet from the southwesterly corner of Seventy-sixth street and Madison avenue is inconsistent with a description which states the point of beginning as '' being opposite the centre of a party wall.'' This inconsistency, however, disappears entirely in view of the facts of record just outlined, corroborated by the testimony of the witness John Graham, who was the owner of the corner lot subsequent to 1883, and who testified that it was then a vacant lot and that he entered into a party wall agreement with the owner of No. 28 East Seventy-sixth street with reference to the identical wall under dis-

cussion, and reinforced by the array of facts, which will be briefly outlined. The history of the title of John Noble indicates that he was merely a dummy for William Noble for the purpose of executing the various mortgages to the New York Life Insurance Company. Although the deed from William Noble to John Noble referred to the easterly party wall, the mortgage simultaneously prepared with the deed covering the premises made no reference to any easterly party wall. Then it appears from the deed dated December 8, 1881, made by William Noble at the time when the first ten mortgages were executed to the New York Life Insurance Company, that it contained no reference to an easterly party wall, and that the mortgage then executed covering the premises under review contained no such reference. Moreover, the description in the 1883 deed to John Noble on its face purports to convey twenty feet, a description wholly irreconcilable with a point of beginning opposite the center of the easterly wall, which, if taken as a monument, would produce a width of nineteen feet seven inches instead of twenty feet. In addition to what has just been stated it is undisputed that the twenty-foot lot at the southeast corner of Seventy-sixth street and Madison avenue in 1883 was a vacant lot; that the easterly wall of No. 28 East Seventy-sixth street was not then a party wall, and that Thomas H. Brush, who held the title by deed, which described the premises by a description similar to that appearing in the mortgage to the New York Life Insurance Company in the deed of plaintiff's testator, never questioned the title of the New York Life Insurance Company to the five inches now in dispute in the action foreclosing the mortgage, and indeed affirmatively asserted in his schedules filed in the bankruptcy that he owned no real property. We have thus conclusive proof of the intention of the parties that the

starting point was twenty feet from the southwesterly corner of Seventy-sixth street and Madison avenue and not from the centre of the easterly wall. Under all the circumstances here appearing the plaintiff has not shown that there is a reasonable doubt of defendant's title. But a further reason exists for upholding defendant's title to the disputed five-inch strip. When the foreclosure action was brought Thomas H. Brush was the only person who could have disputed the title of the New York Life Insurance Company thereto. The complaint demanded a decree for the sale of the property as described in the contract between the parties. The court having jurisdiction of the subject matter and the persons involved in the foreclosure action, its decree and the sale thereunder are binding upon all the proper parties thereto. *Blakeley* v. *Calder,* 15 N. Y. 617; *Hirth* v. *Zeller,* 108 App. Div. 198; *Lyon* v. *Lyon,* 67 N. Y. 250. Nor is the force of the decree nor the effect of the sale impaired by the failure of Brush to contest the claim of the plaintiff in the foreclosure action. *Tax Lien Co.* v. *Schultze,* 213 N. Y. 9, 12; *Goebel* v. *Iffla,* 11 id. 170. I am of opinion that the plaintiff was not warranted in rejecting the title tendered and that the complaint must be dismissed. As to the defendant's counterclaim for damages, it cannot be entertained for lack of proof of damages incurred by her upon plaintiff's refusal to take title.

Judgment accordingly.