JAUBERT BROS., INC. *v.* WALKER *et al.*

(In Banc. February 23, 1948.)

[33 So. (2d) 827. No. 36668.]

**R. H. & J. H. Thompson, Fulton Thompson,** and **Robert H. Thompson,** all of Jackson, for appellant.

W. U. Corley and Hugh M. McIntosh, both of Collins, and C. W. Sullivan, of Hattiesburg, for appellees.

246

Argued orally by **J. H. Thompson**, for appellant, and by **Hugh McIntosh**, for appellees.

**Griffith, J.,** delivered the opinion of the court.

Appellant filed a bill to subject the land described therein to the enforcement of an alleged judgment lien. The land is a tract of 120 acres. The chronology is briefly as follows:

1. On March 18, 1931, the land was owned by P. A. Dale.

2. On the date aforesaid P. A. Dale executed and delivered to S. S. Dale, Jr., a deed of trust on said land to secure an indebtedness of $3,275. This deed of trust was recorded on April 29, 1931.

3. On May 5, 1931, appellant recovered a judgment against P. A. Dale for $4,107.53 and the judgment was enrolled on May 28, 1931.

4. On November 22, 1932, S. S. Dale, Jr., assigned the deed of trust, and the note evidencing the secured debt, to the Merchants Company, a corporation, the assignment being entered upon the record on November 26, 1932.

5. On August 19, 1935, P. A. Dale conveyed the land to the Merchants Company by a warranty deed, duly recorded.

6. On November 7, 1935, by warranty deed duly recorded, the Merchants Company conveyed the land to B. D. Walker and D. L. Buckley, and they and their vendees are appellees herein.

7. On April 12, 1938, appellant recovered a judgment against P. A. Dale in renewal of the judgment previously mentioned, and the renewal judgment was enrolled on April 22, 1938.

8. On May 19, 1938, P. A. Dale was adjudged a bankrupt in the District Court of the United States, and on July 26, 1938 was discharged in bankruptcy.

9. On March 24, 1945, the present suit was filed by appellant.

The defendants fully answered the bill, setting up several defenses. Among the defenses they averred as follows: That when, on August 19, 1935, the mortgagor and the owner conveyed the land to the then holder of the mortgage and indebtedness aforementioned, that is to say, to the Merchants Company, it was upon the agreement that the note and indebtedness would be credited with the sum of $800 as the consideration for said conveyance; that he was in fact given such credit on the debt; that the land at the time of the conveyance was worth far less than the amount of the credit, and could

not have brought as much on a formal foreclosure; that, as a matter of fact, the land at the time was unimproved, cut-over woodland, and was not worth exceeding $1 per acre.

Appellant, the complainant, moved to strike the answers, contending that they presented no defense sufficient in law. The effect of the motion was, of course, to admit the facts asserted in the answer. The motion to strike was overruled.

The casual reaction of the legal mind is that the only manner by which a junior lienholder may be put out of the way by a senior encumbrance is to formally foreclose by a public sale either by a trustee or by a commissioner, in which case the trustee's or the commissioner's deed will relate back to the date of the senior encumbrance, so far as junior encumbrancers are concerned.

In this jurisdiction, however, it has long been a common business custom to consummate a foreclosure by agreement between the mortgagor and the mortgagee accompanied by a conveyance by the mortgagor to the mortgagee of the mortgaged property when the property is actually and distinctly worth less than the debt. This works to the advantage of both the mortgagor and the mortgagee, because it saves the costs of a formal foreclosure, and is of no actual disadvantage to the junior encumbrancers because when the mortgaged property is worth distinctly less than the mortgage debt there is nothing left over to which the equity of redemption could attach as being of any value.

This custom and practice must have been in mind when, more than 50 years ago, this Court considered the case Yates v. Mead, 68 Miss. 787, 10 So. 75, 76. In that case, the mortgagee, Danner & Company, had subsequently obtained a deed of conveyance from the mortgagor; and, as shown by the briefs, it was contended by appellants, the holders of a junior judgment lien, that "the only way for the mortgagee to procure an absolute title free from junior liens is to foreclose", while the appellees

contended "that the mortgagee had the right to take the mortgaged estate, in good faith, in satisfaction of their preexisting debt secured by the mortgage."

Had the Court agreed with the position taken by appellants, the language of the Court now to be quoted would have been unnecessary and would not have been used; but the Court responded rather to the above stated contention by appellees and said: "Granting the correctness of the general proposition, it is true, nevertheless, that in the present litigation it was incumbent upon those asserting this right in Danner & Co. to show that they so dealt with the mortgaged estate, in taking to themselves absolute title to the same as not to injure or destroy the rights of junior lienors. In other words, the burden was upon Danner & Co., or, more properly speaking, upon those claiming under them, to show the amount due upon the mortgage debt at the time of the taking of an absolute conveyance to the property, to show the value of the property at the time; to show that the debt was equal in amount to the value of the mortgaged estate; that the equity of redemption was valueless, and hence that no harm came from such acquisition of absolute title to the junior judgment creditors. This burden the appellees have not successfully borne." The implication of this language is unavoidable that if the proof there outlined had been met by the mortgagee it would have foreclosed the junior lienholders. Indeed, it would be an apt application of the maxim that Equity regards substance rather than form.

In the present case the burden in every respect above mentioned has been met in their answer by the defendants, and, unless we are to withdraw what was said by the Court in Yates v. Mead, their answer must be held to be sufficient; and we cannot now withdraw the quoted language because it has become a rule of property as to thousands of similar transactions since that announcement was made years ago.

And we do not in this State stand alone in this matter. In Alabama, where conditions are similar to ours, their Supreme Court has said in Pruett v. First National Bank, 229 Ala. 441, 157 So. 846, 847, to quote: "It is further established that where the parties effectuate a foreclosure by agreement, consummated by a conveyance, in lieu of a sale under the power, the title so acquired relates back to the execution of the mortgage, and such a foreclosure has, and will be given, the effectiveness of a foreclosure in equity."

There having been, as the record now stands before us, that which was the equivalent of a foreclosure good in equity, all duly recorded and for a consideration far in excess of the value of the equity of redemption so that the junior lienholders were not thereby harmed, the interest of the junior lienholder, the appellant in this case, in the mortgaged land, was thereby terminated, and the court was correct in so holding. It is fundamental in our equity procedure that a complainant must not only show a right in himself which has been infringed, but also that he has been harmed thereby beyond that which is merely technical. Federal Land Bank of New Orleans v. Mississippi Power & Light Co., 157 Miss. 737, 739, 128 So. 98.

It is not necessary to pursue the other features of the case.

Affirmed and remanded.