David 0. Boehm, J.
This action was commenced to foreclose a mortgage made by the defendants, Milton Swartz and Ronald Cohen, to the plaintiffs herein, upon premises known as 310-314 Central Park, Rochester, New York.
A default judgment of foreclosure and sale entered on May 31, 1966, provided that the mortgaged premises be sold at public auction, th.u from the proceeds there be paid to plaintiff the sum of $47C 75 costs and disbursements and the sum of $11,707.82 due on the . ¿ortgage. The judgment further provided that plaintiff rece rer of defendant Milton Swartz, the whole deficiency or so much thereof as the court determined to be just and equitable of the residue of the mortgage debt remaining unsatisfied after the sale.
By a further order of this court, dated August 19, 1964, a receiver was appointed of the rents and profits of the mortgaged premises during the pendency of the action.
At the foreclosure sale on March 17, 1967, there being no other bidders, the premises were sold to plaintiff Angelina G-riffo, for the sum of $1. Copies of the Referee’s report of sale, dated June 14, 1967, were duly served on all parties. No exceptions thereto were ever filed. The report of sale shows a deficiency of $12,419.90. According to the plaintiffs’ appraiser, realtor Thomas H. Brenna, the premises at the time of sale had a fair market value of $4,500.
Prior to the foreclosure action, Cohen conveyed his interest in the premises to Swartz, hereinafter designated as the defendant. Since Cohen was served, but did not appear or answer, he is presently in default.
*506 The present application for a deficiency judgment, brought pursuant to section 1371 of the Real Property Actions and Proceedings Law, is resisted by the defendant on the ground that the long delay prior to conducting the foreclosure sale constitutes laches. In addition, the defendant seeks to surcharge the receiver because of the alleged negligent performance of his duties.
The position of the plaintiffs is that the unopposed judgment of foreclosure requires awarding the deficiency judgment as a matter of course because any defenses the defendant had should have been raised when the application for the foreclosure judgment was made.
The receiver denies being negligent, but admits that the condition of the property deteriorated after his appointment and stopped producing any income some time thereafter. His explanation is that this was due entirely to the already run-down condition of the property when he took over, the number of improvements required and the inadequate income produced by the property to make them.
Almost one year after the receiver’s appointment, in June or July, 1965, plaintiffs’ and defendant’s attorneys, following many months of fruitless settlement negotiations, personally viewed the premises together as a result of the plaintiffs ’ concern about the property’s state of decay and disrepair. The premises were then vacant and suffering badly fror-1 vandalism, windows were broken, doors missing, copper pipes t amoved and toilet fixtures ripped out.
After this visit defendant’s counsel served on July 19, 1965, a notice of appearance only, requesting service of the Referee’s report, order of sale, notice of motion to confirm sale and order of confirmation and the other papers in the proceeding. The notice of appearance contains the following language: “ Defendant, Milton Swartz, does hereby appear but interposes no answer in this proceeding. ’ ’
Defendant claims that after acquiring title, he caused extensive improvements to be made and thereby obtained increased tenant occupancy. He introduced evidence at some length regarding the nature of the improvements and that when he relinquished management to the receiver in September, 1964, all of the rental units were fully occupied and, except for two small delinquencies totaling $11, all rentals were current.
The extent and nature of the defendant’s repairs and improvements are open to serious question. Plaintiffs point out that many of the plumbing improvements claimed by the defendant had already been installed or purchased before defendant took *507 title. The existing unsatisfactory heating arrangements in the premises were apparently not replaced or improved by him as the receiver, in his affidavit of November 8,1967, notes that when he took over in September, 1964, some of the heating was in violation of the Rochester City Building Code.
Plaintiffs’ affidavit of May 4, 1964, in support of the application for the appointment of a receiver, stresses that the mortgagors (defendant and Cohen) “ allowed the premises to become deteriorated, run-down to such a point and condition as to not allow complete occupancy due to the numerous violations allowed to continue on the part of the defendants ”.
The Rochester Rehabilitation Commission’s records disclose that on December 4, 1962, three months after defendant took title, there was a serious uncorrected violation. On March 7, 1963 a further inspection by the city showed many additional violations, all attributed to ‘ ‘ owner neglect ’ ’. Presumably defendant did nothing to correct them, for the Building Bureau’s records specifically note that violations listed in 1959 were corrected in 1960, but note no similar correction for the 1962 and 1963 violations.
The rentals, even from full occupancy, were obviously not adequate to meet expenses as the defendant did not pay the 1963 and 1964 county taxes, the 1962-1963 city taxes and the 1963-1964 city taxes, totaling about $1,000. This action was begun because of failure to meet a mortgage payment.
Unfortunately, the property, already marginal, deteriorated even further after the receiver was appointed. In September, 1964, one month after his appointment, there was a fire involving the corner store. This was followed by extensive water damage when a water pipe burst in January, 1965. By October, 1964, tenants had already begun to vacate the premises. This situation compounded the difficulty of the receiver whose position throughout is that the income from the property was insufficient to keep the property in repair and that the income was so inadequate that he became personally responsible for a sizeable utility bill. The rental income dwindled and finally stopped altogether as the property’s condition went steadily downhill.
On February 3, 1965, the Rochester Bureau of Buildings, Rehabilitation and Conservation mailed a notice of violations to the defendant, who in turn gave it to his lawyer, who in turn mailed it to the receiver. On April 28, 1965, the receiver was notified by the Department of Social Welfare that it would withhold any further rentals unless the property was in compliance on or before September 1, 1965. On May 10, 1965 the Bureau of Buildings sent another notice of violations to the defendant, *508 which again was turned over to the receiver by the defendant’s lawyer. There was a second fire on the premises in December, 1965, and then a third fire a week or so later.
Complaints and notices of violations from the Bureau of Buildings were received in increasing number by the defendant and the receiver. Finally, in February, 1966, the premises were boarded up by the city to prevent entry by unauthorized persons, but the vandalism and deterioration were unchecked. At last, following a hearing on January 31,1967, the city issued an order to repair, followed on April 10, 1967, approximately one month after the foreclosure sale, by an order of demolition because of failure to comply.
The manner in which the sale was conducted, its fairness and legality, as well as the amount of the deficiency, are not disputed by the defendant. However, the defendant’s position in this proceeding is that he is not liable to the plaintiffs for any deficiency because, had there been no delay in conducting the foreclosure sale, there would have been no deficiency.
This defense cannot be sustained. Aside from the unanswered question of why the defendant took no affirmative action himself with respect to the pending foreclosure proceeding, something he could have done (37 Am. Jur., Mortgages, § 724, p. 155), there is no reason given why he waited to assert this defense until the application to confirm. The same defense could have been raised much earlier. After his visit to the property in June or July, 1965, defendant’s counsel reached the opinion that his client was not liable for any deficiency because of what had happened to the property.
The same defense also could have been incorporated in his pleadings. Judgment was not taken until May 31, 1966, yet the only pleading served on behalf of the defendant was the notice of appearance, dated July 19, 1965, after the visit to the premises, and which, by its very language, seemed to stress the fact that the defendant was not interposing an answer.
A judgment of foreclosure and sale having been entered against the defendant, all matters of defense which were or might have been put forth and litigated in the foreclosure action are concluded. The rule has been stated as follows: ‘1 Any defense that may be offered to a decree of foreclosure or against a personal decree for the debt should be presented in due course during the proceedings, or sufficient reason given for not doing so, and it must be germane to the issue and must present a legal reason why plaintiff should not recover. Thus, findings of fact in a decree of foreclosure, showing defendants personally liable for any deficiency that may remain after a sale of the mortgaged *509 premises, preclude defendants, on an application for a deficiency judgment, from presenting any defense which could or should have been interposed prior to the announcement of the decree, since the findings of fact in a mortgage foreclosure decree, on issues properly pleaded, are not reviewable on objections to a deficiency judgment; but, where such decree is not sustained by the pleadings, the application for a deficiency judgment is subject to any defense that the person against whom it is sought may have.” (59 C. J. S., Mortgages, § 779, pp. 1478-1479; see, also, Matter of Casey, 186 Misc. 151.)
Thus, where the court has jurisdiction of the subject matter and of the parties involved, its decree and sale thereunder are binding upon all of the parties and the force of the decree and the effect of the sale are not impaired by a mortgagor’s failure to contest the claim of the plaintiff in the action. (Talifer Co. v. Falk, 105 Misc. 6.)
Admittedly, the judgment relates only to the facts then existing and does not preclude a defendant from interposing, as a defense to an application for a deficiency judgment, new facts occurring after the decree (59 C. J. S., Mortgages, § 779, p. 1479; Blomgren v. Tinton 763 Corp., 18 A D 2d 979, 980), but no new facts have been shown. The badly deteriorated condition of the property at the time of and prior to the judgment, the serious and numerous code violations which ultimately led to the demolition of the structure on the property, the vacancies, vandalism and fires, were as well known to the defendant as to the plaintiffs. For example, defendant received a copy of every notice of violation issued by the city.
As previously stated, the defense now raised does not question the legality of the sale, or misconduct, fraud or overreaching with respect to it, but laches because of the delay between the date of judgment and the date of sale. Nevertheless, the situation upon which the defense is based existed, and the defendant then had knowledge of it, at the time the judgment was taken, after notice to him, by default. He chose not to contest the application at that time and, accordingly, judgment was taken and that judgment provided for a deficiency judgment in an amount which the court determined to be just and equitable.
In addition to being bound by the judgment, the defendant’s rights are also controlled by the applicable section and subdivisions of the Real Property Actions and Proceedings Law. These took effect, sua sponte, simultaneously with the judgment.
“ 1. If a person who is liable to the plaintiff for the payment of the debt secured by the mortgage is made a defendant in the action, and has appeared or has been personally served with the *510 summons, the final judgment may award payment by him of the whole residue, or so much thereof as the court may determine to be just and equitable, of the debt remaining unsatisfied, after a sale of the mortgaged property and the application of the proceeds, pursuant to the directions contained in such judgment, the amount thereof to be determined by the court as herein provided.
“ 2. * * * 'Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus the amount owing on all prior liens and encumbrances with interest, plus costs and disbursements of the action including the referee’s fee and disbursements, less the market value as determined by the court or the sale price of the property whichever shall be the higher.” (Real Property Actions and Proceedings Law, § 1371; emphasis supplied.)
Thus, even if the granting of a deficiency judgment is discretionary, once granted, the right thereto becomes absolute. The judgment is res judicata not only as to everything in issue, but also those matters necessarily involved in the litigation as of the time it was obtained. It is interlocutory only as to amount. (59 C. J. S., Mortgages, § 704, pp. 1279-1281; 15 Carmody-Wait, Mortgage Foreclosure, §§ 235, 409, 410.)
Because the balance of the debt secured by the mortgage remaining after a foreclosure sale is not controlling upon the court with respect to what, if anything, should be awarded as a deficiency judgment (15 Carmody-Wait, Mortgage Foreclosure, § 407), a subsequent application is required but only to enable the court to determine whether the amount of the deficiency reported to it has been justly and equitably arrived at. In the absence of new intervening facts, relitigating the issues already resolved by the judgment of foreclosure is uncalled for, particularly where a defendant has notice of the steps being taken and waits until the completion of the action and the sale of the property before coming forward with any defenses he claims to have. By so doing, he makes himself chargeable with laches and is precluded from raising it as a defense. (Henmor Funding Corp. v. Rodriquez, 17 Misc 2d 378, 379.)
The defendant’s references in his memorandum of law to those cases involving laches are not applicable to the situation here. They were decided on the basis of the relationship between surety and mortgage holder, and the rights and obligations superimposed by the law, rather than upon the rights and obligations flowing directly between mortgagee and mortgagor and existing solely because of their covenants with each other. For *511 example, McMurray v. Noyes (72 N. Y. 523), cited by defendant, was an action upon a guarantee contained in an assignment of a bond and mortgage. The court held that a delay in foreclosure of 14 months during which time a fire destroyed the building on the mortgaged property, was sufficient to constitute laches, but did so because the guarantor’s obligation to pay any deficiency following foreclosure and sale required due diligence on the part of the creditor.
Even in those situations where the mortgagor has become a surety because of a subsequent conveyance, he must, by notice, demand that the holder of the mortgage foreclose. If the foreclosure is not thereafter commenced within a reasonable time, the mortgagor has a defense against a claim for a deficiency to the extent that the property at the time of notice exceeded in value what its value was at the time of the subsequent foreclosure and sale. (15 Carmody-Wait, Mortgage Foreclosure, § 403; 38 N. Y. Jur., Mortgages and Deeds of Trust, § 237, p. 460.)
However, even where we are dealing with the much greater protection provided for a surety, such demand or notice must be given or laches or estoppel will not result by the mere delay on the part of the mortgage holder to foreclose. (Kings County Trust Co. v. Derx, 237 App. Div. 548; Hakala v. Van Schaick, 171 Misc. 418, 423-424; 38 N. Y. Jur., Mortgages and Deeds of Trust, § 237, p. 461.)
There exists another quite serious question, which the court does not here decide; that is, whether the defense of laches would, in any event, be available to the defendant.
For example, there is strong authority for the proposition that where one is entitled to relief as a matter of course, laches may not be raised as a defense. In Monroe County Sav. Bank v. Baker (147 Misc. 522), the late Justice CmxmirGHAM, sitting in Special Term of the Supreme Court of this county, so held in granting summary judgment for the plaintiff in a mortgage foreclosure action. He stated (p. 523): “The second defense is that the plaintiff was guilty of laches in not foreclosing the mortgage at a prior date and that as a consequence of its delay the property has depreciated in value. However, laches is a defense in an equitable action only when the relief demanded therein may be granted or refused in the discretion of the court. When the plaintiff has an absolute right to relief, laches is not a defense. (Pollitz v. Wabash R. R. Co., 207 N. Y. 113, 130.) ” (See, also, 36 N. Y. Jur., Limitations and Laches, § 156.)
Thus, where the remedy is concurrent in law and in equity, the Statute of Limitations rather than the doctrine of laches or estoppel is generally applicable (35 N. Y. Jur., Limitations and
*512 Laches, § 27; vol. 36, § 154) and for this reason a heavy burden of proof rests on one setting up a defense of laches where the Statute of Limitations has not yet run on the obligation. (Reconstruction Finance Corp. v. Harrisons & Crosfield, Ltd., 204 F. 2d 366, cert. den. 346 U. S. 854.)
Accordingly, it has been held that the court cannot deny a mortgagee relief to which he is entitled under the mortgage because of conditions not attributable to him. (Strochak v. Glass Paper Making Supplies Co., 239 App. Div. 312.) Here the First Department said that a court of equity, in the absence of a controlling statute, is not justified in refusing to enter a foreclosure judgment where there is no showing of inequitable conduct on the mortgagee’s part.
This rule of relief as a matter of course is pressed by the plaintiff. His position is that the application for a deficiency is pro forma only and that the statute compels a judgment for such deficiency to be granted, absent any showing that the sale or the circumstances surrounding it were improper; and, consequently, laches is not available as a defense.
It is true that the right to obtain a deficiency judgment is a creature of and rests entirely upon statute (Rutherfurd Realty Co. v. Cook, 198 N. Y. 29; City Real Estate Co. v. Realty Constr. Corp., 167 Misc. 379). The procedure for obtaining a deficiency judgment is regulated by section 1371 of the Real Property Actions and Proceedings Law, derived from section 1083 of the Civil Practice Act.
Prior to 1830, when the Revised Statutes were enacted, the Court of Chancery could only decree a sale of the mortgaged premises and application of the proceeds to payment of the mortgage debt. It could not render a personal decree for the deficiency in the foreclosure action and a separate suit at law upon the debt was required to recover the deficiency. (Jamaica Sav. Bank v. M. S. Investing Co., 274 N. Y. 215; Reichert v. Stilwell, 172 N. Y. 83; Frank v. Davis, 135 N. Y. 275; Equitable Life Ins. Soc. v. Stevens, 63 N. Y. 341.)
On the surface, therefore, it would seem that a deficiency judgment as well as a foreclosure judgment is based upon legal rights only. Nevertheless, a foreclosure action is equitable in nature and the court may require any party to show that it has dealt fairly before giving relief. (Germania Life Ins. Co. v. Potter, 124 App. Div. 814; Monaghan v. May, 242 App. Div. 64, 67.)
This inherent and continuing power of the court, which has an interstitial coexistence with the statute, is compellingly set forth *513 in Home Owners’ Loan Corp. v. Wood (164 Misc. 215, 219): “We hold that there is vested in equity the right to prevent injustice, and that the exercise of its power does not require the fiat of the Legislature. We hold that equity is not impotent, but that its powers should be exercised, and such powers are not here limited. We hold that this court has the power to determine the manner and the time when the determination as to a liability for deficiency shall be made, and that it necessarily follows that it has the right to determine the methods and procedure by which the liability for deficiency shall be fixed. (Heiman v. Bishop, 272 N. Y. 83; Monaghan v. May, supra; Kurtz v. Ferrante, 243 App. Div. 739; Guaranteed Title & Mortgage Co. v. Scheffres, 247 id. 294; Flyer v. Elms Realty Co., Inc., 248 id. 772; Vogel v. Edwards, 249 id. 742; Dry Dock Savings Institution v. Harriman Realty Corp., 150 Misc. 860; affd. 244 App. Div. 793.) We hold the granting of a deficiency judgment is not mandatory under section 1083 of the Civil Practice Act.” (See, also, 59 C. J. S., Mortgages, § 780, p. 1479.)
The evidence compels the conclusion that the plaintiffs are entitled to a deficiency judgment against the defendant and such a judgment is granted. It should be emphasized, however, that this relief is allowed because of the failure of the defendant to present a substantial factual basis for denial thereof, as well as for failure to interpose a defense in time, not because the law compels it as a matter of course.
However, no adequate explanation has been furnished by the plaintiffs for the admittedly lengthy lapse of time between the judgment of foreclosure, May 31, 1966, and the time of sale, March 17, 1967, a period of almost a year. The burden of this delay, although it may be attributable to someone other than the plaintiffs, should not be borne solely by the defendant and for this reason the interest from May 31,1966 to June 14, 1967, the date of the report of sale, is disallowed. In all other respects the Referee’s report of sale is confirmed. The court finds further that the fair market value of the property at the time of sale, $4,500, shall be deducted from the amount due and owing to the plaintiffs.
The receiver shall turn over to the plaintiffs the sum of $871.26 which, according to the testimony at trial represents the balance of the rental income received by him from the property and remaining in his hands. This sum of money shall be deducted from the total amount of the deficiency as herein awarded and plaintiffs are to have judgment against the defendant Milton Swartz for the balance.
*514 BECEIVEB’s LIABILITY
Defendant seeks to surcharge the receiver in an amount equal to the deficiency assessed against the defendant. Although the receiver was neither efficient nor diligent in the exercise of his duties and in at least two respects has come forward with no explanation for what appears to be actual neglect, the court does not view the receiver as having been totally responsible for what happened to the buildings on the property which led to their ultimate demolition.
There is no question but that when the property was turned over to the receiver, it was already run-down. Indeed, it was for this very reason that the plaintiffs made an application for the appointment of a receiver. Further, there is no doubt but that the property was incapable of supporting itself from the rental income and the receiver should not be placed in the position of assuming a personal financial burden which the defendant was either unwilling or unable to carry.
The fact that the receiver, on his own responsibility and without prior leave of the court, hired someone else to collect the rents, do minor repairs and keep an eye on the property, does not in and of itself constitute negligent performance of his duties. The general rule is that court approval must be secured before the receiver may hire an agent, but the solution for noncompliance is a simple one; i.e., the fees of the agent will not be allowed as expenses. (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 8004.04, pp. 80-51, 80-52.)
The legal responsibility of the receiver to maintain the receivership property in good repair as well as his liability for any damage that results from his failure to maintain the property is settled law. (7A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6401.18; cf. General Obligations Law, § 9-101.)
Accordingly, a receiver of rents and profits may be surcharged for a deficiency resulting from a mortgage foreclosure sale where he neglects the duties imposed upon him in his order of appointment. (Morea v. Muratore, 214 N. Y. S. 2d 491, affd. 15 A D 2d 671.)
The order of August 19, 1964 appointing the receiver was essentially one empowering him to collect rents as well as to institute and prosecute any legal proceedings required for the care and protection of the property, including summary proceedings. The order gave the receiver the right to apply to the court for further instruction and power whenever the same were deemed necessary to enable him to properly perform his duties.
The defendant contends that the receiver should have applied to the court for whatever further power he may have required *515 to make necessary repairs and improvements, an application which the receiver never made. However, it is difficult to see what the receiver could have done without the funds necessary to do them with, and although he was obliged to maintain and preserve the property, he conld not, lacking such funds, stem a deterioration that resulted in the moving of almost every tenant within four months of his appointment.
Equity requires the same fairness in dealing with the obligations and liabilities of the receiver in this case as it does with respect to the rights of the parties. (49 N. Y. Jur., Receivers, § 64.)
The receiver, on his appointment, in addition to arranging for a bond, also obtained a fire insurance binder covering the premises in the amount of $15,000 with Liberty Mutual Insurance Company for a 60-day period, in which the receiver was the named insured.
At the time of the fire of September, 1964, the premises were admittedly insured by Liberty Mutual and the receiver sent a proof of loss by letter dated December 9, 1964, together with an estimate of the damage caused by the fire itemized as follows: Personal property loss $250, physical damage to property $618, total $868. This fire loss claim was never paid by the insurance carrier nor did the receiver commence an action to recover the same within the policy period of limitations. Therefore, the claim is now outlawed.
It is apparent from all of the papers before the court and the testimony and evidence produced at the hearings that the receiver’s application to his duties was not equal to his responsibilities. Granted, the task imposed upon him was difficult and, in some respects, frustrating, but this hardly excuses certain obvious lapses. His failure over many months to respond to repeated requests for an accounting, his indifference to the proceedings preliminary to the order of demolition by the city, as indicated by his absence at the adjourned hearing, his lack of response to the order to show cause as to why he should not account and his nonappearance in court when the order was granted, his failure to keep and/or preserve full and complete records of the property’s income and expenses, his permitting the period of limitations to expire without commencing legal proceedings against the fire insurance carrier to recover for the insured fire damage of September, 1964, the unexplained freezing of the pipes in January, 1965 and the extensive water damage caused thereby, all compel the inescapable conclusion that his responsibilities as an arm of the court were, at least with respect to the foregoing, inadequately met.
*516 Although there was little, if any, chance of his single-handedly, being able to transform it to a fully reconditioned, sound and productive property, nevertheless the insurance proceeds were sufficient to repair the ¡fire damage and ordinary care would have prevented the bursting pipes and water damage' which were not caused by an outside agency, such as vandalism, but by freezing. If the property were too far gone before these occurrences to stop its ultimate, inevitable demise, proper and prompt attention would have permitted it to continue to generate income longer than it did.
Failure to give this minimal attention to these necessary and reasonable duties constituted negligence and for this negligence the receiver must be surcharged. (49 N. Y. Jur., Receivers, § 64.) Such surcharge shall be in an amount equal to (1) the unrecovered fire damage of $868 and (2) the cost of repairing the frozen pipes and water damage, $1,975 — a total of $2,843. There may be deducted therefrom any unreimbursed moneys he can satisfactorily show he personally expended on behalf of the property, such as for utilities, and defendant is awarded judgment over and against the receiver for the balance.
The receiver was further remiss in failing to keep adequate and proper accounts (CPLR 6404). Although no application has been made by the receiver in this or any prior proceeding for fees or commissions, a determination is now made with respect to the same and such fees or commissions are disallowed (CPLR 8004, subd. [a]; Slack v. McAtee, 175 Misc. 393). The receiver, upon refunding the rent moneys held by him in the foregoing sum of $871.26 shall be discharged and his responsibilities as such terminated. Except as herein otherwise set forth, the account of the receiver is approved.
In the event the receiver does not or is unable to pay all or any part of the sum surcharged against him within a reasonably prompt period of time, then and in such event the Fidelity & Deposit Co. of Maryland shall pay the same either in full or to the extent of any unpaid balance and upon such payment shall be released and discharged from further liability thereon. In no event shall the defendant’s obligation to discharge his liability to the plaintiffs be dependent upon or abide payment to the defendant of the amount surcharged against the receiver.