**UNITED STATES of America,
Plaintiff,**

v.

**JOE MURRAY'S POINT LOOKOUT,
INC., et al., Defendants.**

No. 70–Civ. 5353.

United States District Court,
S. D. New York.

March 20, 1972.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for the United States by Daniel H. Murphy, II, Asst. U. S. Atty., of counsel.

Heffernan & Brown, Windham, N. Y., for defendant Skellyway Construction Co., Inc. by Charles J. Brown, of counsel.

CROAKE, District Judge.

MEMORANDUM

This action, filed on December 7, 1970, seeks judgment for plaintiff United States of America ("the Government") on two mortgages and notes, and foreclosure of the property pledged thereunder. The only non-defaulting defendant, Skellyway Construction Co., Inc.

("Skellyway") has asserted the priority of its mechanic's lien. The peculiarity of the case is that the Government, besides being the foreclosing mortgagee, is also the apparent owner of the fee interest in the proprty. The action, then, is not brought to collect a debt so much as to remove a cloud on the Government's title.

There are two motions pending; Skellyway seeks summary judgment dismissing the complaint, and the Government by "application" which the Court will treat as a cross-motion, albeit improperly noticed, seeks judgment foreclosing the property and distributing the proceeds to itself as senior lienor. This "application" is thus in essence another motion for summary judgment in so far as the complaint alleges an equitable cause of action for foreclosure.

According to the undisputed factual allegations, the Government possessed two mortgages on the same property, consisting of four apparently contiguous parcels located in the Town of Durham, Greene County, New York, within the Southern District. The mortgages were both granted by co-defendant Joe Murray's Point Lookout, Inc. ("Murray's Point"), the then owner of the fee interest, in return for loans from the Small Business Administration ("SBA"), a governmental instrumentality. One loan, in the amount of $100,000, evidenced by a note and mortgage both dated July 31, 1967, and duly recorded on August 2, 1967, was made directly by SBA to Murray's Point. The other loan, in the amount of $56,000, and evidenced by a note and mortgage both dated June 27, 1968, was made by SBA to co-defendant Hunter Area Development Company, Inc. ("Hunter") in the first instance. Hunter contemporaneously reloaned the money to Murray's Point, and assigned its mortgage from Murray's Point to SBA by an assignment also dated June 27, 1968, the date as well of the recording of the mortgage, note, and assignment. The money was presumably intended for use in payment for some or all of the expenses involved in the acquisition of the real estate and the construction thereon and initial operation of a motel-restaurant-rathskeller complex.

Very shortly thereafter, Murray's defaulted on its loan payment obligations of approximately $1,500 per month, and SBA was brought to the realization that the venture was not going to be successful. Therefore, in order to avoid the necessity for a foreclosure, at least against Murray's Point, it was agreed that Murray's Point would convey the property encumbered by the mortgages to SBA in full satisfaction of the debt. An affidavit signed by Murray's Point's president on a form prepared by SBA explicitly so provided.

SBA was willing to accept the property rather than the full amount in cash apparently because it realized that the prospect of obtaining any significant amount of cash from Murray's Point was slight, whereas the property as improved was considered to be at least equal in value to the amount of the outstanding debt. SBA appraised its value in November of 1969 at $175,000 as of April 1, 1970; at the time of the agreement to convey, the total unpaid loan liability was $164,701.66. SBA estimated that, taking account of the costs of the conveyance, the net value of the property would exactly equal the outstanding indebtedness.

The conveyance was effected by a duly recorded warranty deed dated October 20, 1969, which recited *inter alia* that:

"The parties hereto intend that the fee herein granted shall not merge with the mortgages . . . "

Thus it would appear that no satisfaction piece has ever been executed or requested. *See* Real Property Actions & Proceedings Law § 1921(1) (McKinney's Consol.Laws, c. 81, 1963) ("R.P.A.P.L.").

The Government claims that this clause was inserted at its request in order to protect itself against the precise situation which has occurred herein: the concurrent appearance of a new junior creditor and the insolvency of the primary debtor. The question remains, however, whether this device was effective.

Within several days after the conveyance, Skellyway filed a Notice of Mechanic's Lien alleging an unpaid and overdue debt of $11,263.12 arising out of its performance of extra work related to a construction contract dated November 14, 1967. The Government disputes both the validity of the lien, on the ground of untimely filing under applicable state law, Lien Law § 10 (McKinney's Consol. Laws, c. 33, 1966), *see also* N.Y.U.C.C. § 9-104(j) (McKinney 1964) (fixtures), and its enforceability as against the United States, presumably because of the Supremacy Clause of the Constitution, Article VI, cl. 2, *see* R.P.A.P.L. § 1461, *cf.* § 1541. Skellyway subsequently brought an action in Greene County Court for the foreclosure of this lien; the United States, a defendant in that action (the State is the other) removed it to this Court, where it is now pending as a separate action (Docket No. 70-Civ. 5092).

Finally, the Government, on or about November 17, 1970, entered into an agreement with co-defendant Point Lookout Motel, Inc. ("Motel") whereby Motel leased and occupied the premises, and agreed eventually to purchase them for $103,000 cash. The conditions of the sale were otherwise undisclosed, but presumably were subject to the vicissitudes of this litigation. According to Motel's president, the contract of sale has been signed, but had not as yet been closed as of the date of argument of these motions.

Skellyway contends that this agreement is contrary to the terms of a public auction held on September 26, 1970, since the terms of the auction required that the closing occur within thirty days of the sale. *Cf.* R.P.A.P.L. § 1407. Motel's president was high bidder at the auction; whether he bid as an individual or directly on Motel's behalf is unclear. Consequently, the true holder of equitable title is presently undeterminable with certainty. But the United States does hold legal title, and all parties who would be necessary in an action under R.P.A.P.L. § 1301 have apparently been

joined as defendants herein. *See* R.P.A. P.L. § 1311.

■■ Both motions raise the issue of the Government's power to foreclose the property and obtain the priority share of the proceeds. Its status as legal owner of the fee interest is not necessarily a bar to a foreclosure action. Egan v. Engeman, 125 App.Div. 743, 744-745, 110 N.Y.S. 366 (1st Dept. 1908), but the lack of a foreclosable security interest would be.

The Government's two mortgages, which if valid prime Skellyway's subsequently recorded mechanic's lien, Lien Law, *supra*, § 13(1), would clearly suffice to permit maintenance of this action. The only reason asserted why they might not be valid is a merger by operation of law, notwithstanding the non-merger clause in the conveyance in lieu of foreclosure, because of the resultant circuity of title. The issue, then, is whether there was a merger.

■ This case apparently presents an issue which is novel in this state. Nevertheless, the law is clear in New York that a non-merger clause in a conveyance will generally be given effect. Egan v. Engeman, *supra*. In the New York case which most closely approximates the present circumstances, the court determined that, in appropriate circumstances, such a clause would be effective, American Savings & Loan Ass'n v. Eidelberg, 54 Misc.2d 668, 283 N.Y.S.2d 255, 257 (Sup.Ct.Rockland Cty.1967). However, that action involved the determination of the rights of a junior lienor whose lien antedated the conveyance in lieu of foreclosure. In this case, the junior lienor's security interest postdates the conveyance, although the alleged debt out of which it arose antedates the conveyance.

In a leading case in another jurisdiction, Fort Scott Building & Loan Ass'n v. Palatine Ins. Co., 74 Kan. 272, 86 P. 142 (1906), an event subsequent to the conveyance was involved. The mortgagor, prior to the mortgagee's acquisition of the fee interest by conveyance in

lieu of foreclosure, had effected fire insurance payable "as to the interest of the mortgagees only," as additional security for the mortgage debt. After the mortgagee's acquisition of the fee, a fire damaged the premises, and in an action on the policy, the insurance company resisted imposition of liability on the theory that the policy had lapsed because of the merger and consequent extinguishment of the mortgagee's lesser interest as mortgagee in its greater interest as fee owner. The appellate court, however, ascertained that it had been the mortgagee's intent to preserve the existence of the mortgage so as to continue the insurance coverage. It then stated,

> "It is therefore generally held, that whether a merger results or not, when a mortgagee acquires the legal title to the real estate upon which he holds the mortgage, depends upon the intention of the mortgagee, actual or presumed. If no intention appears, it will be presumed to be, as will best conserve his interests." 86 P. at 144.

The Court then proceeded to find no merger; judgment was for the mortgagee.

This case may be taken for the proposition that the paramount consideration on a question of merger *vel non* should be the interest of the mortgagee. A more generalized statement of the law as developed by this and other decisions is that:

> "Merger will be relieved against as to intervening liens and other interests except where (1) with knowledge of their existence the holder of both the mortgage and redemption intentionally extinguished the mortgage, and (2) where he assumed or took subject to them. The better view is that negligence in not discovering such liens or interests is immaterial. In certain cases, the acquisition of the redemption interest by the mortgagee will be given the same effect as a strict foreclosure as to junior interests." Osborne, Mortgages (2d Ed.) ¶ 275.

The decision and reasoning in the *Eidelberg* case, *supra*, is consonant with this statement; it is presumptively the rule which New York would follow in order to resolve the present controversy, were it presented to a state court.

In this case the Government has clearly expressed its intent that no merger occur upon the closing of the conveyance to it of the fee. There was also apparently no express assumption of Murray's Point's personal obligations to Skellyway, or subjection to its personal rights against Murray's Point under the construction contract and amendments. There is every reason to believe, therefore, that a New York court, interpreting the precedents in its state and elsewhere, would find no merger as between the Government as mortgagor-mortgagee and Skellyway.

A finding of merger with respect to other sets of relationships arising as a result of the conveyance is fully consonant with this conclusion. Thus, there may well be a merger between the interests of Motel, as Murray's Point's successor in interest through the Government, and the Government, as mortgagee, for purposes of unification of the fee. To find otherwise would be unnecessarily to confuse the title in the ultimate successor to the fee interest. But while this might be material to the Government's application for immediate foreclosure, *infra*, it is immaterial to the determination of the status of Skellyway, the lienor. For the lienor holds its claim upon the property by reason of the acts of the original mortgagor, Murray's Point, and its claim is legal, as opposed to equitable. Therefore, conveyances subsequent to the proper filing of its lien could not materially affect its validity and seniority, whatever they may be.

Another relationship is that of the parties to the original SBA loans. In a legal action against Murray's Point, the conveyance, admittedly in full satisfaction of its indebtedness and cutting off its equity in the premises, would extinguish the debt. Central Hanover Bank & Trust Co. v. Roslyn Estates, 266 App.Div. 244, 248–249, 42 N.Y.S.2d 130, 133–134 (2d Dept.1943), aff'd per curiam, 293 N.Y.

680, 56 N.E.2d 295 (1944). Such a result is necessary in order to prevent a potential double recovery with a consequent windfall at the expense of the debtor and therefore of the junior creditors. But this is of no help to Skellyway either. For one thing, neither of the present parties appears interested in pursuing its remedies against Murray's Point; no action has been brought against it in this Court, whether by the Government, for breach of contract or of warranty, or by Skellyway, for breach of contract. For another thing, proceedings in equity, like the present action in so far as it seeks foreclosure, involve aspects of the mortgage liability other than the availability of the mortgage as collateral. The mortgage is mere collateral in an action on the note. It is precisely the other-than-collateral value of the Government's mortgages which is involved here.

The equities of this situation, as well as the precedents, both in New York and elsewhere, militate against a finding of merger and extinguishment of the mortgage. In the first place, Skellyway, which had not perfected its lien at the time of the conveyance, should not be treated more preferentially than Eidelberg, the New York junior lienor who had perfected his lien, in American Savings & Loan Ass'n v. Eidelberg, *supra*. Furthermore, if a merger were found to have occurred, Skellyway would receive a windfall, namely, the advancement of its status as a secured creditor, for which it had never bargained with any party. On the other hand, if merger is not found, Skellyway is not prejudiced; the transfer of title to the fee by means other than foreclosure should do no damage to its personal remedies, such as they may be, against its obligor; these were all it had at the time of the conveyance. And the conveyance to the Government apparently created no new interest, encumbrance, or charge on the property which could be senior to any inchoate security interest in land or appurtenances which Skellyway might have possessed. Finally, the Government should not be penalized for attempting in good faith to resolve its differences with Murray's Point without resort to litigation.

■ The Government's motion, for an immediate foreclosure, must also be denied as premature, since there is no proof of the fair market value of the property at the time of the conveyances either to or from the Government. The parties have apparently agreed that the unencumbered value of the property, at the time of the first transfer, was at least equal to the amount of Murray's Point's indebtedness, but Skellyway is not bound by the Government's assertion that this was the maximum fair market value.

If in fact the market value was at the most equal to the value placed by the Government, it still does not follow that a foreclosure may be ordered immediately. For foreclosure may actually be unnecessary. While New York has clearly determined that foreclosure may in some circumstances be permissible, there appears to be no authoritative statement as to whether or not it may sometimes be dispensed with, as is the case in other jurisdictions. *See* Jaubert Bros., Inc. v. Walker, 203 Miss. 242, 33 So.2d 827 (1948) (property worth less than debt); Note, Conveyance from Mortgagor to Mortgagee as Foreclosure of Junior Liens, 48 Colum.L.Rev. 955 (1948); *cf.* R.P.A.P.L. §§ 1401, 1411. This question was not discussed by the parties, and is premature in the absence of a final determination of the value of the property; therefore, it need not be determined at the present time. If a foreclosure were unnecessary, the validity of the lien could perhaps be determined by judicial declaration. *Cf.* R.P.A.P.L. §§ 1921, 1352.

On the other hand, if it be assumed that New York courts would refuse to consider the conveyance in lieu of foreclosure sufficient to render foreclosure unnecessary, they might still accept the second conveyance at public auction and presumably at full value to have been a suitable substitute. Foreclosure would then remain a useless formality. However, an issue would then arise concerning the proper valuation date for for-

closure purposes. In this regard it has been noted that:

"It appears, however, that in [New York] when the mortgage is not merged in the fee, final termination of the relationship between the parties may still be effected by foreclosure; whether, in that event, the valuation is of the date of the transfer or of the ultimate foreclosure is not made clear. Egan v. Engeman, *supra.*" Kohn v. C. I. R., 197 F.2d 480, 482–483 (2d Cir. 1952).

Whether the property increased in value while the Government was in possession, or decreased for reasons for which the Government is responsible, would be two additional factual issues, if the valuation date is determined to be the date of the second, "foreclosure" conveyance. The Government has refrained from controverting the first issue, by agreeing to pay over to Skellyway any surplus realized at foreclosure up to the amount of Skellyway's debt and accrued interest. It has apparently controverted the second by denying liability for any loss in the property's value.

Therefore, at least until the terms of the second conveyance are discovered, it cannot be said either what the property is now worth, and therefore who will share in it to what extent, or for that matter, whether the Government's conduct has or has not been consistent with its present request for the equitable remedy of foreclosure. *See* Griffo v. Swartz, 61 Misc.2d 504, 306 N.Y.S.2d 64, 72–73, 74–75 (Monroe Cty.Ct.1969).

A further comment is in order. The parties have proceeded to date with a voluntarily unified schedule of discovery in the present action and that of Skellyway. Additional discovery is likely; until now, it has been nonduplicative, but there is no assurance that such will be the case in the future. This might become significant should it be determined that actions taken by the Government are equivalent to a judicial foreclosure from which Skellyway was omitted; Skellyway's foreclosure action would then take on added significance. It would appear

on balance that the benefit of procedural simplification from a consolidation would counterbalance any inconvenience of moving to attain it.

Both motions are denied.

So ordered.